## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| ALEXANDRA DEITEMYER, | ) | |
| | ) | Case No. 18-cv-2002-ELH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **PLAINTIFF'S MEMORANDUM IN** |
| | ) | **OPPOSITION TO THE MOTION OF** |
| STEVEN RYBACK, ESQ.; | ) | **BIERER DEFENDANTS AND TSI TO** |
| JONATHAN W. BIERER, ESQ.; | ) | **DISMISS THE COMPLAINT OR FOR** |
| BIERER LAW GROUP, P.A.; | ) | **SUMMARY JUDGMENT** |
| TRANSWORLD SYSTEMS, INC.; | ) | |
| DOES 1 through 10 inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

FILED _____ ENTERE
LODGED _____ RECEIVE

SEP 2 4 2018

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Unrepresented Plaintiff, Alexandra Deitemyer, respectfully submits this her Memorandum in Opposition to (Doc. 4) the motion of Steven Ryback, Jonathan Bierer and The Bierer Law Group, P.A. (collectively the "Bierer Defendants"), and (Doc. 6) joined in by Transworld Systems, Inc. ("TSI"), (all together the "Defendants") to dismiss the Complaint or alternatively for summary judgment on the sole count brought under the Fair Debt Collection Practices Act ("FDCPA" or "Act").

### PRELIMINARY SUMMARY OF OPPOSING ARGUMENT

The National Collegiate Student Loan Trust 2005-3 ("NCSLT 2005-3"), while the legal owner of Plaintiff's debt and the entity to whom she owed money, was not a "creditor" under the FDCPA because it acquired her debt after she defaulted solely to collect for an investor, and she requests damages for Defendants' failure to inform her of that fact in their communications with her when attempting to collect her debt. If Plaintiff prevails on that claim, the Court would have to find that NCSLT 2005-3 is not a "creditor" under the FDCPA, but that decision would not invalidate the judgment or contradict the Maryland court's conclusion that NCSLT 2005-3 had

standing to bring that action or was owed money by Plaintiff. Congress granted Plaintiff a private right of "action" for actual and statutory damages or "class action" to enforce the debt collectors' liability within one year of the violation whether or not the debt is reduced to judgment by the state court within that time. Without an exemption under the Act, state preclusion law inconsistent with the Act must yield, 15 U.S.C. §§ 1692n, 1692o. This federal action is not barred by doctrines of preclusion.

Second, Defendants argue from an erroneous view—of whether and what § 1692g required rather than a bona fide error of fact—that the requirement to give Plaintiff notice of her rights under § 1692g(a) was never triggered by the Bierer Defendants because their first communication with Plaintiff—service of a summons and complaint they say—was an "initial communication," and 1692g(d) provides that a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a). However, the Ninth Circuit recently agreed with amici FTC and CFPB that "the initial communication" is ambiguous, and "h[e]ld that the FDCPA unambiguously requires any debt collector—first or subsequent—to send a § 1692g(a) validation notice within five days of its first communication with a consumer in connection with the collection of any debt," noting that the issue has not been addressed by any of its sister Circuits in a published decision. See *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068 (9th Cir. 2016). Plaintiff had the statutory right to receive, but Defendants never gave, that notice. If Plaintiff prevails on that claim, the Court would have to find that the Bierer Defendants violated the Act independent of the state preclusion doctrines, and whether their client is a creditor or not.

## ARGUMENT

The Defendants' Memorandum (Doc. 4-2, "Def. Memo") challenges the sufficiency of the Complaint suggesting that Plaintiff's claims under the FDCPA are barred by the doctrines of

*res judicata* (claim preclusion) and collateral estoppel (issue preclusion). Defendants don't dispute that they and NCSLT 2005-3 are debt collectors. Independent of preclusion, they also counter that Bierer Defendants were not required to investigate the "accuracy" or "validate the *ownership* of the student loan debt" as a matter of law, that any such error in the amount of the debt or owner of the debt is a bona fide error. Defendants' grounds and arguments fail to meet the substance of the Complaint. They argue incorrectly that the Bierer Defendants did not trigger (and hence did not violate) the notice obligations set forth in § 1692g(a). Notably, Defendants do not address claims for violations of § 1692c(b) for communicating with third parties (Compl. ¶¶ 34, 38, 40, 41, 42) and therefore waive opposition to them.

## I.  Preclusion

### A.  Defendants fail to demonstrate that the Plaintiff's private right of action is subject to doctrines of preclusion under Fed. R. Civ. P. 12(b)(6).

#### 1.  Defendants' arguments misunderstand Plaintiff's claim and issue.

Plaintiff contends that NCSLT 2005-3 is not a "creditor" under the FDCPA, because it acquired the debt after Plaintiff defaulted. (Compl. ¶¶ 17–18, 28–29; see also id., generally). Plaintiff relies on the definition of "creditor" in the FDCPA:

> The term 'creditor' means any person . . . to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. § 1692a(4). Plaintiff also contends that NCSLT 2005-3 is not a "creditor" because the would-be creditor is a debt collector under the second sentence of § 1692a(6). (See Compl. ¶¶ 25–26.) Therefore, Plaintiff claims Defendants violated § 1692e(10) by sending deceptive communications to her in connection with debt collection that named NCSLT 2005-3 instead of an actual "creditor" without also sending a validation notice within five days. (See Compl. ¶¶ 25, 51.) And, therefore, the damages Plaintiff requests stem from the fact that the Defendants did not

3

inform Plaintiff "at the threshold of their collection activity" that there was no "creditor." (Id. ¶ 27.) Defendants argue that, in requesting this Court to find that NCSLT 2005-3 was not the creditor, Plaintiff asks this Court to find that NCSLT 2005-3 did not own the debt or that Plaintiff did not owe NCSLT 2005-3—a conclusion contrary to the one the state court reached in order to enter the judgment in favor of NCSLT 2005-3. (See Def. Memo at 12; id. generally.) Defendants' argument misunderstands Plaintiff's claim. Whether NCSLT 2005-3 is the entity to whom Plaintiff owes her debt is not dispositive of whether NCSLT 2005-3 is her "creditor" under the statute in light of the term's exclusion under § 1692a(4). Factually, NCSLT 2005-3 fits precisely within that exclusion. Although the Complaint sometimes uses the statutory language "to whom the debt was owed," (e.g., Compl. ¶ 27, 28, 31, 47, 51), Plaintiff is not contesting the state court's decision that she owed her debt to NCSLT 2005-3 at the time of the action.

In order to avoid this issue of whether the debt was acquired by NCSLT 2005-3 and TSI after default, Defendants wish the Court to take judicial notice of documents filed in the state court, pointing out that courts do not accept "allegations that contradict matters properly subject to judicial notice." But, "[a] court may take judicial notice of a document filed in another court *not for the truth of the matters asserted in the other litigation*, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998) (emphasis added). Plaintiff stands on her Complaint at this juncture. The statements of counsel are not evidentiary. At the pleading stage, Defendants' exhibits outside the Complaint would have to be properly introduced in admissible form, and those matters inconsistent with the Complaint cannot be considered on a motion to dismiss. Defendants' Memo, top of p. 2, acknowledges the detailed path which Plaintiff's Note allegedly took *"to arrive at the NCSLT 2005-3" after default but prior to collection activity.* Defendants

do not challenge this in their motion. Because Plaintiff's debt arrived at the SCSLT 2005-3 prior

to commencing the state action, Plaintiff's claim does not challenge NCSLT 2005-3's ownership

of the debt and standing to sue, or attack the judgment NCSLT 2005-3 received under Md. Rule

3-306(d).

> **a. The burden Congress placed on Defendants by exception—
> to show that the debt was not in default when acquired—is
> not subject to preclusion on a motion to dismiss because the
> Complaint is consistent with that exception on its face.**

If an affirmative defense clearly appears on the face of the complaint, the Court may rule

on that defense when considering a motion to dismiss. See *Kalos v. Centennial Sur. Assocs.*,

No. CCB-12-1532, 2012 WL 6210117, at \*2 (D. Md. Dec. 12, 2012) (quoting *Andrews v. Daw*,

201 F.3d 521, 524 n. 1 (4th Cir. 2000) (citation and quotation marks omitted)).

However, Congress was especially solicitous toward consumers bringing an FDCPA

action in the way it structured the text, presuming the debt was in default when obtained by a

person collecting for another. Because § 1692a(6)(F) is an exception to the generally applicable

definition of "debt collector," see *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136

(4th Cir. 2016), aff'd, 137 S. Ct. 1718 (2017), the defendant bears the burden of showing that the

exception to the rule applies. See *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91

(2008); *Evankavitch v. Green Tree Serv., LLC*, 793 F.3d 355, 361-63 (3d Cir. 2015).

Consequently, in this case, the burden is on Defendants to show, as an affirmative defense, that

Plaintiff's debt was ***not*** in default when collection and servicing rights were acquired. See

*Darlene Garner v. Select Portfolio Servicing, et al*, No. 17-1303 (6th Cir. 2017). For that reason,

as a matter of law, an affirmative defense of preclusion to § 1692a(6)(F)(iii) cannot and does not

clearly appear on the face of the Complaint. Beyond that, Plaintiff's factual allegations are

consistent with both § 1692a(6)(F)(iii) and the state court judgment. Moreover, none of the

exhibits submitted by Defendants, if they could be considered, show when TSI began servicing
Plaintiff's debt. On their motion to dismiss, Defendants have not established that they can show
Plaintiff's debt was not in default at the time the Bierer Defendants, the NCSLT 2005-3, and TSI
each acquired the servicing rights, or that they have a defense at this stage.

Because Plaintiff's claim is therefore plausible on its face, Defendants attempt to
interpose that Plaintiff is barred from attempting to "relitigate" whether NCSLT 2005-3 is her
creditor, because that issue was previously decided when the state court found that NCSLT
2005-3 had standing and was entitled to judgment as the owner of the debt. However, Plaintiff
did not raise, and the Maryland court did not decide, the issue of whether NCSLT 2005-3 is a
"creditor" under the FDCPA.

> **b. Defendants fail to identify and demonstrate that the claims,
> issues, and the relief sought in the proceedings (i) are
> identical or (ii) that her FDCPA private right of action
> could and should have been litigated in the state
> proceeding.**

Defendants' conflate Ms. Deitemyer's objection *in the state court* (that NCSLT 2005-3
lacked admissible evidence for prima facie standing under Md. Rule 3-306(d)) *with* her FDCPA
claim in the Complaint and in her letters to the Bierer Defendants (that NCSLT 2005-3 is not a
creditor under 15 U.S.C. §§ 1692a(4) and 1692g(a)(2)). See Def. Memo at 4. Those are two
substantially different claims and issues. Defendants fail to identify and demonstrate that the
claims, issues, and the relief sought in the proceedings (i) are identical or (ii) that her FDCPA
private right of action could and should have been litigated in the state proceeding.

> **c. Plaintiff does not impugn the judgment of the state court.**

For the purpose of this federal action, Plaintiff embraces the June 11, 2018 Affidavit
Judgment of the District Court of Maryland for Frederick County ("judgment" of the "state
court"), and readily concedes that the state court "determined that Plaintiff had defaulted on her

student loan obligations and that NCSLT 2005-3, as the owner of said debt, was entitled to collect the past due sums." Def. Memo at 12. [1] However, the state court did *not* adjudge that NCSLT 2005-3 was Plaintiff's "creditor" as defined in the FDCPA,[2] even though it may have necessarily decided that NCSLT 2005-3 met the requirements of Md. Rule 3-306(d). The Complaint does not challenge NCSLT 2005-3's ownership of the debt conferring standing to sue in the state court. Defendants suggest this judgment "gives rise to the defenses of res judicata and collateral estoppel," but in conflating the claims and issues in the state court with this private right of action, they do not demonstrate preclusion applies.

> ### 2. Claim preclusion: to the extent Maryland law supersedes the FDCPA to determine the preclusive effect of the state proceedings, Defendants' motion failed to demonstrate that the Plaintiff's private right of action is subject to res judicata.
>
> > #### a. Section 1692k of the Act authorizes and encourages consumers to enforce liability by bringing an "action" or "class action" *not* a claim, counterclaim, or cross-claim.

Section 1692k of the Act authorizes and encourages consumers to enforce liability only by bringing an "action" or "class action" *not* a claim, counterclaim, or cross-claim. See Compl., ¶ 1. Congress authorizes statutory damages in an "action" and provides up to one year from the date on which the violation occurs to bring any action, 1692k(d), not only until Plaintiff's debt is "reduced to judgment," 1692a(5), by a state court. As Congress intended, any FDCPA claim as a "defense" or "recovery" was therefore inappropriate, not available. The claim presented in the current action is not identical to the one determined in the prior action, and damages as to this claim *could not have been litigated* in the original suit. Plaintiff's private right of action is not

---

[1] The judgment, procured by debt collectors and not a creditor, is not central to Plaintiff's independent claim; it is simply a manifestation of the debt asserted to be owed, "whether or not such obligation has been reduced to judgment," 15 U.S.C. § 1692a(5).

[2] The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

subject to the defense of res judicata under Rule 12(b)(6).

The Defendants' stated grounds for invoking res judicata beginning on page 9 are a plaintiff's contention that the "defendants lacked the legal authority to enforce a promissory note ... and therefore violated the FDCPA (which [they say] are the same claims Plaintiff is advancing in this litigation)." Defendants are incorrect, because as pointed out on page 10, the court considering res judicata asks whether "[t]he relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." If so, the failure to raise a counterclaim is preclusive. *Bullock*, 2015 U.S. Dist. LEXIS at * 15. Same with *Jones*, which centered around Jones' allegations that Defendants have no security interest in the Property, and claim preclusion prevents the court from re-adjudicating issues which were or could have been decided by the state court. As stated above, Plaintiff embraces the judgment of the state court. Defendants arguments have no merit and their cases are inapposite.

### b. To the extent that Md. Rule 3-306 proceeding precludes this § 1692k action, Maryland law is inconsistent with the FDCPA and state law must yield.

To the extent that Defendants' arguments attempt to apply Maryland foreclosure case law to suggest that the Maryland Code Annotated Rule 3-306 proceeding precludes this § 1692k action, Maryland law is inconsistent with the Act and must yield. See *Romea v. Heiberger*, 163 F.3d 111, footnotes 10, 11 (2d Cir. 1998) ("If the statutes did conflict, moreover, it would be [state law], and not the FDCPA, that would have to yield ... The record contains no indication that New York has made any such claim as to the sufficiency of the § 711 process to achieve the objectives of the FDCPA.") See also, *Heredia, Hortantsa and Schultze v. Green*, 667 F.2d 392 (3rd Cir. 1981):

[44]     The FDCPA provides not only for private enforcement, 15 U.S.C.

8

§ 1692k, but also for administrative enforcement by the Federal Trade
Commission. 15 U.S.C. § 1692l. Moreover, the Commission is given authority
"by regulation to exempt from the requirements of this subchapter any class of
debt collection practices within any State if the Commission determines that
under the law of that State that class of debt collection practice is subject to
requirements substantially similar to those imposed by this subchapter, and that
there is adequate provision for enforcement." 15 U.S.C. § 1692o. Under the
statutory scheme any local exemption must first be passed upon by the Federal
Trade Commission. The report of the House Committee on Banking, Finance and
Urban Affairs on H.R. 5294, in which originated the provisions relating to state
exemptions, explains:

[45]      Concern has been voiced by some that the passing of Federal
legislation in the debt collection area might infringe on States' rights. The
committee has considered this matter and has taken steps to minimize any such
infringement. For example, under Section 816, relation to State laws, the laws of
any State with respect to debt collection practices will not be preempted except to
the extent that those laws are inconsistent with any provision of this bill.

[46]      In addition, section 817 provides for exemption for State
regulation. If a State has a debt collection law and would like an exemption, the
State need only apply to the Federal Trade Commission and if the Commission
determines that under the law of that State any class of debt collection practices is
subject to requirements substantially similar to those imposed by this bill, and
there is adequate provision for enforcement, an exemption would be granted.

[47]      The committee does not intend to preclude legislative
experimentation by the States in the area of debt collection practices. Any State
wishing to so experiment in passing strong legislation in this area will have a free
hand to do so and may apply for an exemption under section 817.

[48]      H.R.Rep.No.95-131, 95th Cong., 1st Sess., 7, 8 (1977).
Pennsylvania has neither sought nor obtained Federal Trade Commission
approval for the collection practices of Landlord and Tenant Officers such as
defendant Green. If an application were to be made the Commission would not
approve it, because while 15 U.S.C. § 1692n preserves a role for state law not
inconsistent with FDCPA, the saving clause is qualified by the provision that
"(f)or purposes of this section, a State law is not inconsistent with this subchapter
if the protection such law affords any consumer is greater than the protection
provided by (FDCPA)" (emphasis supplied). The Pennsylvania statutes and court
rules governing Landlord and Tenant Officers fall far short of meeting that
standard.

The FDCPA *preempts state law* to the extent state law affords a consumer less protection

than the FDCPA does. 15 U.S.C. § 1692n; Const., Art XI, Clause 2. Maryland law does not

9

distinguish a creditor from a debt collector pursuing collection against a consumer or non-consumer, and does not require a "creditor" as defined in the Act, and therefore offers less protection than would be consistent with federal law. See Compl. ¶ 50. One of the stated purposes of the FDCPA is "to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Maryland consented to this Act of Congress, and has not received an exemption under 15 U.S.C. § 1692o. The record contains no indication that Maryland has made any claim as to the sufficiency of the Md. Rule 3-306(d) process to achieve the objectives of the FDCPA. There is no important, substantial, or vital Maryland interest involved or one that does not yield to the FDCPA, 15 U.S.C. §§ 1692n, 1692o. Rather than this Court narrowing the extraordinarily broad protections, Defendants should ask Maryland to petition the CFPB for an exemption as to Md. Rule 3-306 proceedings.

### c. To the extent claim preclusion applies, the requirements for claim preclusion to apply are not met.

The question to resolve is whether the conduct of the Bierer Defendants plausibly raises the same cause of action as before the state court in its judgment. Thus, the "cause of action" in the first proceeding was whether the "Complaint – Assigned Consumer Debt Md. Rule 3-306(d)" met the requirements under Md. Rule 3-306(d). It did. Indeed, Plaintiff did not contend before the state court anything regarding the FDCPA. Accordingly, the issue for *res judicata* purposes is whether the "cause of action" in the later proceeding—that NCSLT 2005-3 was not a creditor under the FDCPA—was any part of the cause of action in the first proceeding for an Affidavit Judgment. It was not. All the state court adjudicated in the judgment was whether NCSLT 2005-3 established a *prima facie* case on the basis of evidence that would satisfy the business records exception to the hearsay rule. See *Bartlett v. Portfolio Recovery Associates, LLC; Townsend v. Midland Funding, LLC*, 438 Md. 255 (2014). ("Rule 3-306, as amended in 2011, is designed to

raise the bar for plaintiff debt buyers who desire to obtain a judgment on affidavit by requiring them to establish a prima facie case on the basis of evidence that would satisfy the business records exception to the hearsay rule.") "As the Majority opinion also acknowledges, if the defendant files a notice of intention to defend but fails to appear for trial, the court is still to consider whether the debt buyer plaintiff has met the requirements of Rule 3-306. See Maryland Rules 3-306(e)." 438 Md. 292. Ultimately, because Plaintiff failed to appear for trial (as the Defendants argue), Md. Rule 3-306 allows the court to "proceed as if the defendant failed to file a timely notice of intention to defend" and considered whether the debt buyer plaintiff has met the requirements of Rule 3-306(d), and the state court therefore entered a judgment in favor of NCSLT 2005-3.

For the foregoing reasons, the requirement "that the claim presented in the current action is identical to the one determined in the prior adjudication" is not met. And whether the judgment "is a final bar to any other suit *upon the same cause of action* and is conclusive, not only to all matters decided in the original suit, but also *as to matters that could have been litigated in the original suit*" doesn't apply. Here, however, the private right of action arises from the conduct of the Bierer Defendants under federal law and has no effect on the state action. Defendants assume that Plaintiff complained of all the same misconduct as alleged in her federal complaint—which it did not. Defendants argue that, in *Prudencio*, this Court (J. Grimm) held that a plaintiff's FDCPA "claim" was barred by res judicata because a claim includes all rights of the plaintiff to *remedies against the defendant*, and extends to bar claims that could have been brought in the original litigation. The *Prudencio* court noted, "Despite being advised of their right to oppose Defendants' motions, Plaintiffs have not filed a response, and the time for doing so has passed." Thus, the motion was unopposed which arguably led to an adverse decision for

11

that plaintiff in that particular case.

> This Court has consistently held that res judicata bars *collateral attack* on foreclosure judgments. See Jones, 2011 WL 382371, at *5 (holding that claims for violations of the Fair Debt Collection Practices Act, breach of fiduciary duty, and fraud could not be brought, as the claims could have been raised in the foreclosure proceeding); Anyanwutaku, 85 F.Supp.2d at 571 (concluding that plaintiff's claims, inter alia, for illegal foreclosure, fraud and misrepresentation, and conspiracy were barred by res judicata as the claims concern the same transaction).

*Prudencio* (emphasis added.) Defendants' cases are all inapposite. Plaintiff's § 1692k action is

not a collateral attack "for illegal foreclosure, fraud and misrepresentation, and conspiracy" or

anything like that. Plaintiff's claims do not seek damages for illegal conduct regarding the

judgment or the exercise of postjudgment remedies akin to a foreclosure sale of property. This

private right of action for damages authorized by Congress is not a remedy that could have been

raised. Otherwise state preclusion law is inconsistent with the FDCPA and state law must yield.

The FDCPA does not provide for injunctive or declaratory relief or interference with state courts.

For instance,

> We agree with Heintz that it would be odd if the Act empowered a debt-owing *consumer* to stop the "communications" inherent in an ordinary lawsuit and *thereby* cause an ordinary debt-collecting lawsuit to grind to a halt. But, it is not necessary to read Section(s) 1692c(c) in that way * * * **the interpretation is consistent with the statute's apparent objective of preserving *creditors'* judicial remedies.** We need not authoritatively interpret the Act's conduct-regulating provisions now, however. Rather, we rest our conclusions upon the fact that it is easier to read Section(s) 1692c(c) as containing some such additional, implicit, exception **than to believe that Congress intended, silently and implicitly, to create a far broader exception, for all litigating attorneys, from the Act itself.**

*Heintz v. Jenkins*, 514 U.S. at 296 (emphasis added). The Supreme Court said it would be "odd"

arguably because, clearly, the FDCPA does not empower the consumer to stop anything, and it is

perhaps a misperception that the effect of the prohibition in § 1692c(b) is a "bar" when the Act

12

only makes the debt collector liable for damages as a deterrent. Plaintiff would point out that the Supreme Court cautiously and non-authoritatively interpreted § 1692c subsection (c) as being consistent with the *apparent objective* of preserving creditors' judicial remedies. Crucially, in this case, there are no "*creditor's* judicial remedies" identified to be preserved. The record on the motion justifies setting aside the principle of res judicata under state law in the context of the FDCPA.

### 3. Issue preclusion: to the extent Maryland law supersedes the FDCPA to determine the preclusive effect of the state proceedings, Defendants' motion failed to demonstrate that the Plaintiff's private right of action is subject to collateral estoppel under Fed. R. Civ. P. 12(b)(6).

Neither Plaintiff's filings in the Maryland action nor the judgment itself mention the FDCPA or the word "creditor." As Plaintiff has alleged, Maryland law does not require one to be a creditor as defined under the FDCPA—that is, one who acquired the debt before default—in order to have standing to bring an action; rather, ownership by the plaintiff prior to initiating the action is sufficient. See Compl., ¶ 50 (alleging that "Plaintiff's federal claim . . . has never been adjudicated in any court" and that "Maryland law does not distinguish a creditor from a debt collector pursuing litigation against a consumer, and does not require a creditor"). **Ownership of the debt establishing standing to sue in Maryland is not at issue. The identity of the creditor is not an issue in Maryland Rule 3-306(d) proceedings, and Defendants fail to show how the FDCPA definition of "creditor" and that NCSLT 2005-3 received transfer of the debt after default, but prior to initiating an action, is an issue that could have been raised as a defense to defeat standing in the Maryland action so that the Court might conclude as a matter of law that issue preclusion applies.** Determining whether Defendants' misconduct amounted to a lack of standing requires a substantially different analysis than determining whether it violated the FDCPA. *Compare* Md. Rule 3-306 *with* § 1692a(4) (excluding persons

13

who "receive[] an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another" from the definition of "creditor" under the FDCPA). Moreover, as explained earlier, Plaintiff concedes that NCSLT 2005-3 had standing to bring the state action and was the owner of the debt, and the "standing" issue in Maryland does not decide the issue here. Thus, the cases cited by Defendants are inapposite.

Therefore, because Defendants have not satisfied their burden of showing that the identical issue was previously decided in the Maryland proceeding, the Court should deny the motion on collateral estoppel (issue preclusion) grounds.

Defendants also do not demonstrate how applying preclusion *under Maryland law* (not Maryland judgments), which must yield to the FDCPA, doesn't make the phrase "whether or not such obligation has been reduced to judgment" in § 1692a(5) of no effect.

## II. Section 1692g

Generally, § 1692g(a) provides that "in either the initial communication with a consumer in connection with the collection of a debt or another written notice sent within five days of the first, a debt collector must provide specific information to the consumer." *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 320-31 (7th Cir. 2016). Specifically, § 1692g(a) states:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing-
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the

14

debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

The Bierer Defendants are debt collectors that regularly litigate debt collection lawsuits for third parties. They argue from an erroneous view of the FDCPA that § 1692g(a) was never triggered by them because the "initial communication" was their service of a summons and complaint, and 1692g(d) provides that a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).[3] However, the Ninth Circuit recently agreed with joint amici Federal Trade Commission ("FTC"), and the Consumer Financial Protection Bureau ("CFPB")[4] (which administers the FDCPA), that the Act requires every debt collector to give that initial validation notice, noting that the issue has not been addressed by any of its sister Circuits in a published decision. See *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068 (9th Cir. 2016).

Plaintiff alleged the Bierer Defendants' "first communication" with her, Compl., ¶ 36. The Complaint does not identify whether or not this was service of the summons and complaint suggested by Defendants' Exhibit 1, but even if it was a formal pleading under 1692g(d), it did not excuse the Defendants from giving Plaintiff the notice within five days. The *Hernandez* court said, "we hold that although the sentence in § 1692g(a) in which the phrase 'the initial

---

[3] Some theories incorrectly assumed that the FDCPA regulates the contents of complaints, affidavits, and other papers filed in state court, raising concerns for states' rights. With the addition of an amendment, Pub. L. 109-351, 120 Stat. 2006 (Oct. 13, 2006) adding 15 U.S.C. §1692g(d), "legal pleadings no longer need be preceded or accompanied by verification notices." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007). These misperceptions are dispelled by the Ninth Circuit in *Hernandez*.

[4] "[T]he Consumer Financial Protection Bureau … has delegated rulemaking authority under the FDCPA, and the Federal Trade Commission … shares concurrent authority to enforce the FDCPA with the Bureau. See 15 U.S.C. § 1692l (setting forth administrative enforcement and rulemaking authority under the FDCPA)." *Hernandez v. Williams, Zinman & Parham, P.C.*, No. 14-15672 (9th Cir., 2016).

communication' appears is ambiguous when read in isolation, when the sentence is read in the context of the FDCPA as a whole and in light of the statute's remedial purpose, it is clear that the validation notice requirement applies to each debt collector that attempts to collect a debt. * * * Having applied the tools of statutory construction, we hold that the FDCPA unambiguously requires any debt collector—first or subsequent—to send a § 1692g(a) validation notice within five days of its first communication with a consumer in connection with the collection of any debt." Whether an initial communication or first communication, Defendants acknowledge it but seize upon the ambiguity by arguing that it never triggered 1692g(a) as a matter of law. Applying the same rules of construction as the Ninth Circuit did in *Hernandez*, their argument fails, and it is more than merely speculative that their failure to follow up with the validation notice within the next five days violated the Act. Any other interpretation would create "loopholes that [] would undermine the very protections the statute provides." *Id.* at 1075.

See *Zirogiannis v. Seterus, Inc.*, 707 F. App'x 724, 727 (2d Cir. 2017) (summary order) ("[W]e have no trouble concluding that § 1692g of the FDCPA protects an individual's concrete interests" (internal quotation marks and brackets omitted)); *Papetti v. Does 1-25*, 691 F. App'x 24, 26 (2d Cir. 2017) (summary order) (concluding that plaintiff's allegations of violations of §§ 1692e and 1692g by themselves entailed the concrete injury necessary for standing). See *Strubel*, 842 F.3d. at 190 (explaining that "consumer who is not given notice of his obligations is likely . . . unwittingly to lose the very . . . rights that the law affords him" (emphasis omitted)). In *Macy et al v. GC Services*, 17-5593 (6th Cir. 2018) the panel noted that "'Spokeo allows for a bare procedural violation to create a concrete harm' in cases alleging 'failure to comply with a statutory procedure that was designed to protect against the harm the statute was enacted to prevent.' ... (citing with approval Strubel's conclusion that 'a plaintiff may establish standing

based on an alleged procedural violation if Congress conferred that procedural right to protect a plaintiff's concrete interest and if that violation presents a [material] risk of harm to that interest')." (Internal citations omitted.)

### III. The principal damage is the concrete risk of harm to the consumer Plaintiff.

Plaintiff does not allege that Bierer Defendants identified "the wrong owner" of her debt, see Def. Memo at 14. Rather, Defendants should be more concerned with the legal issue of whether their "client/creditor" (Def. Memo at 15) is actually not a creditor as defined by the FDCPA, which is not determined by whether the client is the "correct/current owner" or "rightful owner" of the debt. The issue is not whether Defendants can communicate with a consumer or enforce an interest, but whether they can do so without being liable to the consumer on a case-by-case basis under the FDCPA.

In *Jerman v. Carlisle, McNellie. Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010), the Supreme Court rejected the law firm's argument that "[a]n attorney uncertain about what the FDCPA requires must choose between, on the one hand, exposing herself to liability and, on the other, resolving the legal ambiguity against her client's interest or advising the client to settle—even where there is substantial legal authority for a position favoring the client". . . "a lawyer's interest in avoiding FDCPA liability may not always be adverse to her client. Some courts have held clients vicariously liable for their lawyers' violations of the FDCPA." *Ibid.* That is the exactly the situation this case presents.

The Complaint does not allege the state court judgment. The principal damage arises from the pre-judgment conduct of the Defendants under the FDCPA. The damages including the amount of the judgment *requested* (See Compl., ¶ 41) is a measure of the actual risk to the Plaintiff in Defendants communicating information about the Plaintiff's debt to the clerk of the state court and which provided the basis for an amount which a court of law could award

17

(Compl., ¶¶ 52–55), and a basis for the amount at which damages becomes a deterrent versus remaining a profitable incentive for Defendants as a mere cost of violative business practices. See Complaint, ¶ 1; S. Rep. No. 95-382 p.5; *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008) ("The FDCPA enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").) Additionally, with respect to § 1692i referred to in her letter to Bierer Defendants and on page 4, Plaintiff doesn't claim that § 1692i(b) affirmatively prohibits bringing legal actions (for federalism concerns) and yet § 1692i(b) cannot be construed as surplusage. Plaintiff alleges at ¶ 35 that "Under the text and structure of the Act, this kind of legal action brought by a debt collector is specifically not authorized by § 1692i(b)" and, at ¶ 42, that it negates any permission implied by rules of state courts.

The harm Deitemyer alleged, based on violations of the FDCPA (not procedural violations of state law), is sufficient to confer standing before the federal courts. Whether or not Deitemyer resisted the state action, she was a non-consenting consumer under the FDCPA. She was entitled to receive the notices in § 1692g(a), and entitled to privacy under § 1692c(b).[5] From the Bierer Defendants' failure to provide those notices and from their contacts with the Maryland courts, Plaintiff suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.

‹

---

[5] The FDCPA carefully balances the need to protect consumers' privacy against debt collectors' interests in collecting debts. S. Rep. No. 95-383, at 3, reprinted in 1977 U.S.C.C.A.N. 1695, 1698. The Act's structure reflects Congress's judgment that debt collectors' interests generally outweigh the risks to consumers only when collectors need to determine "the whereabouts of missing debtors." Id.

## CLOSING SUMMARY

Although the National Collegiate Student Loan Trust 2005-3 ("NCSLT 2005-3") had the right to sue Plaintiff to collect her consumer debt (major premise), there were no rights of a "creditor" involved, as that term is defined in the FDCPA. Defendants, while under no duty to independently investigate the accuracy of the debt, erred in their view of the FDCPA concerning the status of their client(s) under the Act. The Bierer Defendants' became liable to Plaintiff when they failed to give Plaintiff the required § 1692g(a) notice within five days of their "first communication" with her (*Hernandez*, supra). Thus, Plaintiff's thirty-day period described in § 1692g(a) in which to seek validation never began or expired. Without a creditor, Defendants can't send a § 1692g(a) notice that complies with §§ 1692g(a)(2) and 1692e(10). By communicating information about Plaintiff's debt, as a non-consenting consumer, with the Maryland state-court clerk, the Bierer Defendants exposed her to the concrete risk of harm to a privacy interest that Congress has identified (§ 1692c(b) in conjunction with § 1692i(b)). Failure to either (i) give her that notice, (ii) or cease collection and settle with her instead as the Supreme Court suggested in *Jerman*, supra, was deceptive and affects an unsophisticated consumer's decision-making process and hinders her ability to assess the risks. That led to the further violations of 1692g(b) when the Bierer Defendants failed to cease collection, i.e., by contacting the state court again in violation of 1692c(b). TSI is vicariously liable for the Bierer Defendants' conduct.

## CONCLUSION

WHEREFORE, upon the sufficiency of the Complaint in stating a claim beyond the speculative level upon which relief can be granted, and for the foregoing reasons, the motions of Defendants to dismiss the Complaint or for summary judgment should be entirely denied.

Respectfully submitted,

Alexandra Deitemyer, Plaintiff pro se
2018 Tuscarora Valley Court
Frederick, MD 21702

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of September, 2018, the foregoing was mailed to the Court and is served through the Court's CM/ECF system to all other parties because they have made their appearance through Counsel of record.

Alexandra Deitemyer