IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALEXANDRA DEITEMYER

    *Plaintiff*

    v.

STEVEN RYBACK, ESQ., et al.
    *Defendants*.

Civil Action No. ELH-18-2002

**MEMORANDUM OPINION**

This case arises under of the Fair Debt Collection Practices Act ("FDCPA"), as amended, 15 U.S.C. § 1692 *et seq*. *See* ECF 1-3 (the "Complaint"). Plaintiff Alexandra Deitemyer, who is self-represented, sued defendants Steven Ryback, Esq.; Jonathan W. Bierer, Esq.; Bierer Law Group, P.A. ("BLG") (collectively, the "Attorney Defendants"); Transworld Systems, Inc. ("Transworld" or "TSI"), and 10 unnamed defendants, alleging multiple violations of the FDCPA. According to plaintiff, the Attorney Defendants violated 15 U.S.C. § 1692c(b) by communicating with third parties about the debt, without plaintiff's consent, ECF 1-3, ¶¶ 34-35, 38-42; they violated § 1692i(b), by bringing an unauthorized legal action against her, *id.* ¶ 35; the Attorney Defendants violated § 1692e by misrepresenting the identity of plaintiff's "creditor", *id.* ¶¶ 36, 51; and they violated § 1692g(a) by failing to provide plaintiff with a validation notice within five days of their first communication. *Id.* ¶¶ 37, 51. Plaintiff also alleges that TSI is vicariously liable for the conduct of the Attorney Defendants. *Id.* ¶¶ 48, 51.

The Attorney Defendants filed a "Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment" (ECF 4), supported by a memorandum of law (ECF 4-2) (collectively, the "Motion") and several exhibits. *See* ECF 4-3 to ECF 4-10. Transworld joined the Motion. ECF

6. Deitemyer opposes the Motion. ECF 8 (the "Opposition"). The Attorney Defendants have replied. ECF 9 (the "Reply").

The Motion is fully briefed and no hearing is needed to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion in part and deny it in part. In particular, I shall grant the Motion as to plaintiff's claims under 15 U.S.C. § 1692c(b) and § 1692i(b), and deny the Motion as to plaintiff's claims under 15 U.S.C. § 1692e and § 1692g(a).

## I. Factual Background[1]

BLG is a professional association that maintains its principal office in Baltimore, Maryland. ECF 1-3, ¶ 5. Bierer, an attorney licensed in Maryland, is lead counsel for BLG. *Id.* ¶ 6. Ryback is also an attorney licensed in Maryland, and he is an associate attorney for BLG. *Id.* ¶ 7. Plaintiff alleges that Bierer and Ryback are "debt collectors" under § 1692a(6). *Id.* ¶¶ 6-7. The Attorney Defendants are counsel for TSI, a corporation formed under the laws of California, with its principal office in Santa Rosa, California. *Id.* ¶¶ 8, 32. Accordingly, plaintiff asserts that Transworld is vicariously liable for the conduct of the Attorney Defendants. *Id.* ¶¶ 48, 54.

On August 24, 2005, Deitemyer executed a promissory note (the "Note") and credit agreement in the principal amount of $16,042.78 in connection with a student loan made to her by JP Morgan Chase Bank, N.A. ("JP Morgan"). *Id.* ¶ 11.[2] Deitemyer alleges that an anonymous investor (the "Investor") invested in the Note, "became creditor," and appointed Transworld to service the Note. *Id.* ¶ 15.

In turn, JP Morgan allegedly "lodged" the Note in an irrevocable trust ("Intermediate Trust") for the benefit of the Investor. *Id.* ¶ 16. JP Morgan, "the investor, the custodian/services,

---

[1] Given the posture of the case, I accept as true the facts alleged in the Complaint.

[2] At that time, plaintiff was known as Alexandra Marino. *See* ECF 1-3, ¶ 11.

and TSI, were privies to the Intermediate Trust having duties as trustees, co-trustees, their servicers or partners." *Id.* According to Deitemyer, if she defaulted on the Note, the Intermediate Trust would transfer the Note to a Delaware statutory trust called National Collegiate Student Loan Trust 2005-3 ("NCSLT"). *Id.* ¶¶ 13, 16. NCSLT "would then receive transfer and assignment of the defaulted debt solely to facilitate collection for the investor." *Id.* ¶ 16. Plaintiff claims that the use of the Intermediate Trust provided JP Morgan and NCSLT with the benefits of "tax avoidance, bankruptcy remoteness, protection from creditors, and privacy[.]" *Id.*

Deitemyer defaulted on the Note on December 3, 2012. *Id.* ¶ 36. She alleges that the Note was not "deposited into the NCSLT 2005-3 by any express Deposit and Sale Agreement or Pool Supplement (whether describing either past or future events), by any signature pages by the NCSLT 2005-3, or reflected in any documents uploaded to the SEC website, or any loan schedules, if any." *Id.* ¶ 14. Yet, by unspecified means, the Intermediate Trust transferred the Note to NCSLT on February 6, 2017. *Id.* ¶ 17. The right to collect on the debt for NCSLT was transferred to Transworld. *Id.*

On April 6, 2017, the Attorney Defendants, on behalf of their client, NCSLT, filed suit against Deitemyer in the District Court of Maryland for Montgomery County, alleging that she defaulted on her student loan obligations in the amount of $22,220.94. *Id.* ¶ 35; *see National Collegiate Student Loan Trust 2005-3 v. Alexandra Marino*, Case No. D-111-CV-18-000575 (Apr. 6, 2017); *see also* ECF 4-9 (Docket for Case No. D-111-CV-18-000575).

Plaintiff contends that on November 21, 2017, the Attorney Defendants sent her a "first communication," in which Dudley Turner, a Transworld employee, stated that "the debt balance of $22,220.94 [on the Note] was 'charged off'" on December 3, 2012. ECF 1-3, ¶ 36. Plaintiff claims that Turner falsely "purports to list, as proof of the NCSLT 2005-3's ownership of the debt,

successive owners and intermediate transfers of the Note," while failing to "mention the transfer [of the debt] to the Intermediate Trust nor . . . whether he or TSI has information related to the debt that was not included" in his statement. *Id.* Further, Deitemyer alleges that after this initial communication, defendants did not provide her with a written notice regarding the debt, as required by the FDCPA. *Id.* ¶ 37.

On January 11, 2018, the Attorney Defendants moved to transfer their suit to the District Court of Maryland for Frederick County. *Id.* ¶ 38. In so doing, they allegedly conveyed information regarding plaintiff's debt. *Id.*

Then, on February 20, 2018, Deitemyer sent the Attorney Defendants a letter stating that "the NCSLT 2005-3 is not her creditor under § 1692a(4) and that their pleadings and their contents are susceptible to [suit under 15 U.S.C.] §§ 1692c and 1692e." *Id.* ¶ 39; *see also* ECF 4-6 (Deitemyer's notice to BLG). With the letter, she also enclosed an invoice dated February 19, 2018, for $137,426.16 in damages. *See* ECF 4-6 at 4.

On February 21, 2018, the Attorney Defendants mailed Deitemyer a copy of their "Motion to Set on Affidavit Trial Docket." ECF 1-3, ¶ 40. In response, on March 1, 2018, Deitemyer filed a "Notice of Intention to Defend." *Id.*; *see* ECF 4-9. On April 20, 2018, the Attorney Defendants moved for sanctions and entry of a default judgment against plaintiff regarding her debt. ECF 1-3, ¶ 41. The underlying litigation proceeded to trial in State court on June 11, 2018. *Id.* at 2, 5. However, plaintiff failed to appear, and judgment was entered in favor of NCSLT, in the amount of $22,477.16. *Id.*; ECF 4-9 at 2.

## II.    Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty.*

*Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .");  *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 2019 WL 1105179, at *3 (4th Cir. Mar. 11, 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, ___, 135 S. Ct. 346, 346 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation.

*Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting

*Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.'" Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.,* 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.,* 637 F.3d at 448). The court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 08 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore,* 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines,* 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union,* 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel.*

*Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). But, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

In the context of a motion to dismiss, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n. 3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. Appx. 200 (4th Cir. May 6, 2016); *cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records"). However, "these facts [must be] construed in the light most favorable" to the non-movant. *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013) (*abrogated on other grounds* by *Reed v. Town of Gilbert, Ariz.*, 576 U.S. ____, 135 S. Ct. 2218 (2015), as recognized in *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015)).

The Attorney Defendants submitted seven exhibits related to NCSLT's State court suit against Deitemyer. Three of the exhibits are integral to and explicitly discussed in the Complaint: NCSLT's complaint against plaintiff (ECF 4-3); plaintiff's "Notice of Intention to Defend" (ECF 4-4); and a letter from Deitemyer to the attorney defendants and NCSLT (ECF 4-6). *See* ECF 1-3, ¶ 35 (NCSLT's complaint); *id.* ¶ 39 (letter from Deitemyer to the Attorney Defendants);

*id.* ¶ 40 (Notice of Intention to Defend).  Accordingly, I may consider them without converting the Motion to one for summary judgment.

The other four exhibits related to the State court suit are public records: plaintiff's opposition to NCSLT's "Motion to Set on Affidavit Trial Docket" (ECF 4-5); Deitemyer's "Motion to Strike Plaintiff's Affidavit and Certification of Dudley Turner" (ECF 4-7); the State court's judgment of June 11, 2018 (ECF 4-8); and the docket from the State suit. ECF 4-9. Although they are not integral to the Complaint, the Court may take judicial notice of them. *See Philips*, 572 F.3d at 180 ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record.").

The Attorney Defendants also submitted an Affidavit of Jonathan Bierer, Esq. (ECF 4-10), regarding BLG's policies and practices in debt collection cases.  The Affidavit is not integral to the Complaint. Accordingly, I may not consider it at this juncture.

Because plaintiff is self-represented, the Court must construe the Complaint liberally. But, there are limits.  In granting a motion to dismiss a complaint brought by a self-represented plaintiff, Judge Bennett explained in *Jackson v. Experian Fin. Servs.*, RDB-13-1758, 2014 WL 794360, at *1 (D. Md. Feb. 26, 2014) (alterations in *Jackson*):

> As this Court has held, "'the proper length and level of clarity for a pleading cannot be defined with any great precision and is largely a matter for the discretion of the trial court.'" *Stone v. Warfield,* 184 F.R.D. 553, 555 (D. Md. 1999) (quoting CHARLES A. WRIGHT & ARTHUR R. MILLER, 5 FEDERAL PRACTICE & PROCEDURE § 1217 (2d ed. 1990)). Although a pro se plaintiff is generally given more leeway than a party represented by counsel, this Court "has not hesitated to require even pro se litigants to state their claims in an understandable and efficient manner." *Id.* (citing *Anderson v. Univ. of Md. Sch. of Law,* 130 F.R.D. 616, 617 (D. Md. 1989), *aff'd*, 900 F.2d 249, 1990 WL 41120 (4th Cir. 1990) (unpublished table decision)). To that end, a district court "is not obliged to ferret through a [c]omplaint, searching for viable claims." *Wynn–Bey v. Talley,* No. RWT–12–3121, 2012 WL 5986967, at *2 (D. Md. Nov. 28, 2012). Rather, a court "may dismiss a complaint that is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if

any, is well disguised." *Id.* (quoting *Salhuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988)).

And, in *Green v. United States*, GLR-15-2026, 2016 WL 7338408 (D. Md. Dec. 19, 2016), Judge Russell dismissed a suit, *sua sponte,* and explained, *id.* at *1:

> The instant Complaint "places an unjustifiable burden on defendants to determine the nature of the claim against them and to speculate on what their defenses might be" and imposes a burden on the court to sort out the factual basis of any claims fairly raised, making dismissal under Rule 8 appropriate. *Holsey v. Collins*, 90 F.R.D. 122 (D. Md. 1981); *see also Spencer v. Hedges*, 838 F.2d 1210 (Table) (4th Cir. 1988). To comply with the rule, a Plaintiff must provide enough detail to illuminate the nature of the claim and allow Defendants to respond. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Although district courts have a duty to construe self-represented pleadings liberally, Plaintiff must nevertheless allege facts that state a cause of action. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (duty to construe liberally does not require courts to conjure up questions never squarely presented).

As noted, defendants' motion is styled as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. *See* ECF 4. A motion styled in the alternative implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion

under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[3]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

In my view, it would be premature to construe the Motion under Rule 56. In regard to the matter of prematurity, the Fourth Circuit has said: "In general, summary judgment should only be granted 'after adequate time for discovery.'" *McCray v. Maryland Dept. of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In *McCray*, the Fourth Circuit determined, *inter alia,* that the district court abused its discretion in dismissing an action before the plaintiff had an opportunity to conduct discovery in connection with a Rule 56(d) motion. *Id.* at 483. The *McCray* Court noted, *id.*: "Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask."

---

[3] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

Accordingly, I shall construe the Motion under Rule 12(b)(6)

### III. Discussion

### A. Overview of the FDCPA

Congress enacted the FDCPA in 1977 (*see* Pub. L. No. 95-109, 91 Stat. 874 (1977)) to protect consumers from debt collectors who engage in "abusive, deceptive, and unfair debt collection practices," to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010); *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996). The statute is concerned with "rights for consumers whose debts are placed in the hands of professional debt collectors . . . ." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001); *see also Ruth v. Triumph Partnerships*, 577 F.3d 790, 797 (7th Cir. 2009).

"A significant purpose of the Act" is the elimination of "abusive practices by debt collectors . . . ." *Brown v. Card Service Center*, 464 F.3d 450, 453 (3d Cir. 2006). Because the FDCPA is a remedial statute, it is construed liberally in favor of the debtor. *Id.*; *see*, *e.g.*, *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 393 (4th Cir. 2014) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561-62 (1987) (recognizing the canon of statutory interpretation that remedial statutes are to be construed liberally)); *Glover v. F.D.I.C.*, 698 F.3d 139, 149 (3d Cir. 2012); *Hamilton v. United Healthcare of La.*, 310 F.3d 385, 392 (5th Cir. 2002).

To establish a claim under the FDCPA, "a plaintiff must prove that: '(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission

prohibited by the FDCPA.'" *Boosahda v. Providence Dane LLC*, 462 Fed. App'x 331, 333 n.3 (4th Cir. 2012) (quoting *Ruggia v. Wash. Mut.*, 719 F. Supp. 2d 642, 647 (E.D. Va. 2010)); *see Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012). "Debt collectors that violate the FDCPA are liable to the debtor for actual damages, costs, and reasonable attorney's fees." *Russell*, 763 F.3d at 389 (citing 15 U.S.C. § 1692k(a)(1), (a)(3)). "The FDCPA also provides the potential for statutory damages up to $1,000 subject to the district court's discretion." *Id.* (citing 15 U.S.C. § 1692k(a)(2)(A)).

Title 15 of the United States Code provides, at § 1692e(10): "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." And, § 1692f states, in pertinent part: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *see Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208-09 (9th Cir. 2013); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000). Thus, the original creditor is not a debt collector. *Carter v. AMC, LLC*, 645 F.3d 840, 843 (7th Cir. 2011). Moreover, the definition of "debt collector" does not include an entity that is "collecting or attempting to collect any debt . . . to the extent such activity . . . (iii)

concerns a debt which was not in default at the time it was obtained by such person[.]" 15 U.S.C. § 1692a(6)(F).

A "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." *Id.* § 1692a(4). Generally, entities servicing or collecting a debt they were assigned before default are considered "creditors" under the Act. Conversely, entities servicing or collecting a debt they were assigned after default are considered "debt collectors" under the Act. *Id.* § 1692a(6)(F)(iii).

"The structure of the Act suggests" that an entity receiving or attempting to collect money due on a debt "must be one or the other," that is, either a debt collector or a creditor. *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 538 (7th Cir. 2003). Creditors and debtors are generally "mutually exclusive" categories under the FDCPA. *Id.* at 536; *see F.T.C. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007) ("[A]s to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive."); *accord Bradford v. HSBC Mortgage Corp.*, 829 F. Supp. 2d 340, 348 (E.D. Va. 2011).

The status of the entity, *i.e.*, debt collector or creditor, is determined with respect to the particular debt at issue and depends on the purpose for which the entity is assigned the debt. *See* 15 U.S.C. § 1692a(4) (excluding from the definition of "creditor" a person who "receives an assignment or transfer of *a debt* in default *solely for the purpose of facilitating collection* of such debt for another") (emphasis added); *id.* § 1692(a)(6)(F)(iii) (excluding from definition of "debt collector" a person who is collecting "any debt … to the extent such activity . . . (iii) concerns *a debt* which was not in default at the time it was obtained . . . .") (emphasis added). "If the one who

acquired the debt continues to service it, it is acting much like the original creditor that created the debt." *Schlosser*, 323 F.3d at 536. "On the other hand, if [the entity] simply acquires the debt for collection, it is acting more like a debt collector." *Id.* And, "[t]o distinguish between these two possibilities, the Act uses the status of the debt at the time of the assignment . . . ." *Id.*; *see also* 15 U.S.C. § 1692a(4), (6)(F)(iii); *Ruth*, 577 F.3d at 796 ("Where, as here, the party seeking to collect a debt did not originate it but instead acquired it from another party, we have held that the party's status under the FDCPA turns on whether the debt was in default at the time it was acquired.").

In 1986, Congress repealed the exemption for attorneys contained in the original version of FDCPA. *See* Pub. L. No. 99-361, 100 Stat. 768 (1986). The Supreme Court subsequently ruled that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995). Therefore, "[a]ttorneys seeking the repayment of a debt on behalf of a client are debt collectors within the ambit of the FDCPA." *McLean v. Ray*, 488 F. App'x 677, 684 (4th Cir. 2012).

The Attorney Defendants do not dispute that they qualify as debt collectors under the FDCPA. It is also undisputed that the student loan in issue qualifies as a consumer debt subject to the FDCPA.

Additional statutory provisions are discussed, *infra*.

## B. Res Judicata

Defendants assert that plaintiff's claims are barred by the doctrine of res judicata because of the "final judgment entered by the District Court of Maryland for Frederick County" in May 2018. ECF 4-2 at 8. However, Deitemyer asserts that res judicata does not apply, because she did

not raise her FDCPA claims as counterclaims in NCSLT's suit against her in State court.  ECF 8 at 3.

Res judicata, or claim preclusion, is a judicial doctrine by which "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979); *see Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008).  The doctrine precludes parties from "contesting matters that they have had a full and fair opportunity to litigate," thereby conserving judicial resources and minimizing the possibility of inconsistent decisions. *Montana*, 440 U.S. at 153-54.  The doctrine of res judicata was "designed to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" *Laurel Sand & Gravel, Inc.*, 519 F.3d at 161-62 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

The party who asserts res judicata has the burden of showing its application.  In *Bennett v. Garner*, 913 F.3d 436, 440 (4th Cir. 2019), the Court observed: "The Full Faith and Credit Act, 28 U.S.C. § 1738, dictates that a federal court must give a state court judgment the same preclusive effect it would be given in the courts of the state that rendered the judgment. Therefore, this court must give any Maryland judgments the same preclusive effect they would be given in Maryland state court under Maryland law." Accordingly, where a federal court assesses res judicata based on a prior proceeding in a Maryland state court, Maryland preclusion principles apply.  *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000); *Williams v. 21st Mortg. Corp.*, PX-16-1210, 2017 WL 1133706, at *7 (D. Md. Mar. 27, 2017) (citing *Migra v. Warren Cty. School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

Under Maryland law, the elements of res judicata, or claim preclusion, are as follows: (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the current suit presents the same cause of action or claim(s) as the earlier suit; and (3) there has been a valid final judgment on the merits by a court of competent jurisdiction. *Colandrea v. Wilde Lake Comm. Ass'n.*, 361 Md. 371, 392, 761 A.2d 899, 910 (2000); *deLeon v. Slear*, 328 Md. 569, 580, 616 A.2d 380, 385 (1992). The elements of res judicata under federal law are analogous to those under Maryland law. *See Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013) (citation and quotation marks omitted); *Weiner v. Fort*, 197 F. App'x 261, 264 (4th Cir. 2006); *Grausz v. Englander*, 321 F.3d 467, 472 (4th Cir. 2003); *In re Varat Enter., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996); *see also Davis v. Wicomico Cty. Bureau*, 447 Md. 302, 306, 135 A.3d 419, 422 (2016) ("The requirements of the doctrine of res judicata [include] . . . that there was a final judgment on the merits.").

The parties primarily dispute the second prong. Defendants assert that plaintiff's claims in the federal case arise out of the same cause of action at issue in defendants' State suit against her. ECF 4-2 at 11-12. Plaintiff disagrees, arguing that the issue here—"that NCSLT 2005-3 was not a creditor under the FDCPA"—was not raised in the State proceeding. ECF 8 at 10.

Maryland courts have "adopted the 'transaction' test, as set forth in § 24 of the Restatement (Second) of Judgments, as the basic test for determining when two claims or causes of action are the same for purposes of res judicata." *deLeon v. Slear*, 328 Md. 569, 589, 616 A.2d 380, 390 (1992); *see Anne Arundel Cty. Bd. of Educ. v. Norville*, 390 Md. 93, 108-09, 887 A.2d 1029, 1038 (2005). Under the transactional approach, "'[w]hen a valid and final judgment rendered in an action extinguishes the plaintiff's claim . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of

connected transactions, out of which the action arose.'" *de Leon*, 328 Md. at 590, 616 A.2d at 391

(quoting § 24 of the Restatement (Second) of Judgments); *see Batson v. Shiflett*, 325 Md. 684, 699,

602 A.2d 1191, 1199 (1992). Of import here, "'[n]ewly articulated claims based on the same

[transactional] nucleus of facts may still be subject to a res judicata finding if the claims could

have been brought in the earlier action.'" *Laurel Sand & Gravel, Inc.*, 519 F.3d at 162 (citation

omitted).

The Maryland Court of Appeals explained in *Norville*, 390 Md. at 109, 88 A.2d at 1038:

> Under the transactional approach, if the two claims or theories are based upon the
> same set of facts and one would expect them to be tried together ordinarily, then a
> party must bring them simultaneously. Legal theories may not be divided and
> presented in piecemeal fashion in order to advance them in separate actions.

In support of their argument for claim preclusion, defendants rely on three cases: *Prudencio*

*v. Capital One, N.A.*, PWG-16-2693, 2016 WL 6947016 (D. Md. Nov. 28, 2016); *Bullock v. Ocwen*

*Loan Servicing, LLC*, PJM 14-3836, 2015 WL 5008773 (D. Md. Aug. 20, 2015); and *Jones v.*

*HSBC Bank USA, N.A.*, RWT 09-2904, 2011 WL 382371 (D. Md. Feb. 3, 2011). In *Prudencio*,

2016 WL 6947016 at *3, the plaintiffs claimed "that Defendants violated the Fair Debt Collection

Practices Act ('FDCPA') . . . by foreclosing on their Property." Similarly, in *Bullock*, 2015 WL

5008773 at *6, the plaintiff alleged claims under the FDCPA, but was essentially "challeng[ing]

the validity of the lien or the Defendants' right to foreclose." Finally, in *Jones*, 2011 WL 382371

at *4, the plaintiff alleged that defendants' sale of a note voided defendants' security interest,

thereby depriving defendants of any rights under the deed of trust.

As Deitemyer correctly observes, in each of these cases, the plaintiff contested the validity

of the debt in order to challenge a judgment of foreclosure in a prior action. ECF 8 at 8. But,

Deitemyer's suit is different: She "embraces the judgment of the state court." *Id.* Indeed, she does

not challenge the validity of the debt or the State court's judgment, only defendants' debt collection methods. *See, e.g.*, 15 U.S.C. §§ 1692e, 1692g(a)-(b).

Maryland courts have repeatedly concluded that "[w]hen a FDCPA claim concerns collection activities, a FDCPA claim does not arise out of the transaction creating the debt." *Senftle v. Landau*, 390 F. Supp. 2d 463, 469–70 (D. Md. 2005); *see, e.g.*, *Alston v. Eberwein Grp., LLC*, TDC-17-3278, 2019 WL 454103, at *4 (D. Md. Feb. 5, 2019); *Cooke v. Carrington Mortg. Servs.*, TDC-18-0205, 2018 WL 6323116, at *2 (D. Md. Dec. 3, 2018); *Mostofi v. Midland Funding, LLC*, 223 Md. App. 687, 703, 117 A.3d 639, 648 (2015); *Green v. Ford Motor Credit Co.*, 152 Md. App. 32 58-60, 828 A.2d 821, 837-38 (2003). A debt collector may own the debt, yet employ unlawful debt collection practices. Likewise, whether Deitemyer is liable to NCSLT for the debt is distinct from whether defendants complied with the FDCPA.

Indeed, because Deitemyer's claims do not challenge the validity of the debt, they would not have been viable defenses against NCSLT in the State action. Nor were the claims compulsory counterclaims. *See Cook v. Bradley*, 2018 WL 824318, at *3 (Md. Ct. Spec. App. Feb. 8, 2018) ("The appellant's cause of action for fraud and negligent misrepresentation would not have to be filed in a foreclosure case because Maryland has no compulsory counterclaim rule comparable to Fed. R. Cir. P. Rule 13(a). Md. Rule 2-331(a) is a permissive counterclaim rule."); *see also* Fed. R. Civ. P. 13(a); *Martin v. Winston*, 2016 WL 4261097, at *6 (Md. Ct. Spec. App. Aug. 11, 2016) ("'[B]ecause cross-claims are permissive under Maryland law, 'a party who does not assert a cross-claim is not barred by res judicata in a subsequent action[.]'") (quoting *Potomac Design, Inc. v. Eurocal Trading, Inc.*, 839 F. Supp. 364, 368 (D. Md. 1993)) (my alteration); *Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1102 (6th Cir. 2015) (lenders' claim on the mortgage was not a compulsory counterclaim in the debtor's FDCPA action because an FDCPA claim "raises different

issues of law from those that a foreclosure action would present" and "does not focus on the validity of the debt, but instead on the use of unfair methods to collect it") (internal citations omitted); *Peterson v. United Accounts, Inc.*, 638 F.2d 1134, 1136-37 (8th Cir. 1981) (concluding that an FDCPA claim addressing debt collection practices is not a compulsory counterclaim to a debt collection action).

To be sure, the instant suit is a product of the parties' earlier dealings. But, for purposes of res judicata, this case does not arise from the same transaction as the earlier State court suit. As noted, whether or not plaintiff was in default of her loan obligation is a separate matter from whether defendants violated the FDCPA in their effort to collect the debt. Therefore, the suit is not barred by the doctrine of res judicata.[4]

## C. FDCPA Claims

### 1. 15 U.S.C. § 1692c(b)

Plaintiff avers that defendants engaged in "communications" with third parties without plaintiff's consent or the prior approval of a court, in violation of 15 U.S.C. § 1692c(b). ECF 1-3, ¶ 34. A "communication" under the FDCPA is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

Section 1692c(b) provides:

[W]ithout the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

---

[4] I discuss, *infra*, the related doctrine of collateral estoppel.

According to Deitemyer, the Attorney Defendants communicated with two courts on multiple occasions. First, on August 16, 2017, the Attorney Defendants "contacted the clerk of the District Court of Maryland for Montgomery County and made their appearance in a legal action the NCSLT 2005-3 brought to collect the debt." ECF 1-3, ¶ 35. And, the Attorney Defendants allegedly contacted the clerk on January 11, 2018, and requested a transfer of the case to the District Court for Frederick County. *Id.* ¶ 38. On February 21, 2018, they filed a "Motion to Set on Affidavit Trial Docket" with the District Court of Maryland for Frederick County. *Id.* ¶ 40. Then, on April 20, 2018, the Attorney Defendants contacted the clerk of that District Court to request an order for sanctions and a default judgment. *Id.* ¶ 41. Deitemyer asserts that none of defendants' communications were reasonably necessary to effectuate a postjudgment judicial remedy. *Id.* ¶ 34.

In *Heintz*, 514 U.S. at 299, the Supreme Court determined that the FDCPA applies to attorneys who regularly engage in consumer-debt-collection activity, "even when that activity consists of litigation." However, the Court noted that this conclusion could result in potential anomalies under the FDCPA. *Id.* at 296. For example, § 1692c(c) prevents a debt collector from communicating with a consumer after that consumer has refused to pay the debt or directed the debt collector to cease further communication. The Court observed that "it would be odd if the Act empowered a debt-owing consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." *Heintz*, 514 U.S. at 296. Accordingly, the Supreme concluded that the text of 15 U.S.C. § 1692c(c) contained an "implicit, exception" for court filings. *Id.* at 296-97.

In *Marino v. Nadel*, GJH-17-2116, 2018 WL 4634150, at *3 (D. Md. Sept. 27, 2018), *aff'd*, 763 F. App'x 305 (4th Cir. 2019), Judge Hazel considered whether a "foreclosure action and

related communications violate § 1692c(b) as third party communications to the court and to the public at large." In his view, *Heintz* teaches that the FDCPA's "internal exceptions should be read to avoid any resulting anomalies." *Id.* Section 1692c(b) contains an exception for communications "reasonably necessary to effectuate a postjudgment judicial remedy." Therefore, Judge Hazel concluded: "The filing of an action to foreclose is a necessary precedent to reaching a postjudgment judicial remedy, so communications with a court that are necessary to maintain that foreclosure action do not violate § 1692c(b)." *Marino*, 2018 WL 4634150, at *3.

Likewise, in the debt collection action, defendants' contacts with the State courts were reasonably necessary precedents to reaching a postjudgment judicial remedy. Therefore, plaintiff's claim fails.

## 2. 15 U.S.C. § 1692i(b)

Plaintiff maintains that NCSLT was a debt collector and therefore barred from bringing legal action against her in 2017, pursuant to 15 U.S.C. § 1692i(b). ECF 1-3, ¶ 42. Section 1692i(b) states: "Nothing in this subchapter [i.e., §§ 1692c – 1692p] shall be construed to authorize the bringing of legal actions by debt collectors."

Plaintiff misunderstands § 1692i(b). It "does not affirmatively prohibit debt collectors from bringing legal actions, but merely declines to extend the circumstances under which they may do so[.]" *Middlebrooks v. Sacor Fin., Inc.*, No. 1:17-CV-0679-SCJ-JSA, 2018 WL 4850122, at *20 (N.D. Ga. July 25, 2018); *see Bey v. Daimlerchrysler Servs. of N. Am., LLC*, No. CIV. 04-6186 RBK, 2005 WL 2090207, at *3 (D.N.J. Aug. 29, 2005). Indeed, "this vague clause does not

stand for the proposition that debt collectors can never bring lawsuits." *Rice v. Palisades Acquisition XVI, LLC*, No. 07 C 4759, 2007 WL 4522617, at *3 (N.D. Ill. Dec. 18, 2007).[5]

### 3. 15 U.S.C. § 1692e

Plaintiff maintains that defendants violated 15 U.S.C. § 1692e in "pursuing collection of the debt while attempting to evade the Plaintiff's right to the name of the creditor to whom the debt is owed." ECF 1-3, ¶ 51; *see id.* ¶ 36. In relevant part, § 1692(e) provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

Defendants do not directly address the merits of the claim. Instead, they argue that it is barred by collateral estoppel. ECF 4-2 at 15. Specifically, defendants state that plaintiff's claim in the underlying suit, that NCSLT was not legally entitled to bring suit against her for the outstanding sums due, "is the identical issue raised by Plaintiff in this case arguing that the [Attorney] Defendants violated 15 U.S.C. 1692e through the use of materially false, misleading and/or deceptive representations[.]" ECF 4-2 at 16.

Under principles of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In other words, collateral estoppel "bars the relitigation of specific issues that were actually determined in a prior action," *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008), so long as the "'party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate'" the issue. *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).

---

[5] To the extent this claim challenges the validity of the debt, it also fails pursuant to the doctrine of res judicata. *See, e.g.*, *Prudencio*, 2016 WL 6947016, at *3; *Bullock*, 2015 WL 5008773, at *6; *Jones*, 2011 WL 382371, at *4.

The applicable law for purposes of claim preclusion in federal court is the law of the tribunal in which the prior judgment was entered. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008). Under Maryland law, collateral estoppel is a "'common law doctrine'" by which, "'[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Cosby v. Dept. of Human Res.*, 425 Md. 629, 639, 42 A.3d 596, 602 (2012).

Collateral estoppel requires satisfaction of four conditions:

"1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom [collateral estoppel] is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom [collateral estoppel] is asserted given a fair opportunity to be heard on the issue?"

*Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 361 Md. 371, 391, 761 A.2d 899, 909 (2000) (citation omitted).

Defendants' argument fails to satisfy the first prong of this four-part test. The issue decided in the underlying litigation, according to both plaintiff and defendants, was whether plaintiff owed the debt in question. ECF 4-4 at 4; ECF 8 at 8. Deitemyer does not dispute that she owes the debt, nor does she challenge NCSLT's ownership of the debt. Instead, she claims that defendants violated § 1692e(10) when they "falsely" listed the transfers of the Note and failed to reveal to plaintiff the name of her creditor. ECF 1-3, ¶¶ 36, 51. This was not an issue decided in the prior adjudication. And, even if Deitemyer had raised the issue, it would not have been a viable defense,

as the § 1692e(10) claim does not concern the validity of the debt. Therefore, plaintiff's § 1692e

claim is not barred by collateral estoppel.

### 4.     15 U.S.C. § 1692g(a)

Deitemyer alleges that the Attorney Defendants violated the FDCPA when they failed to

provide her with the name of her creditor and other information about her debt within five days

after their initial communication with her, pursuant to 15 U.S.C. § 1692g(a)(2)-(5).  ECF 1-3, ¶ 37.

Defendants assert that because the alleged communications with Deitemyer were legal filings,

§ 1692g(a) does not apply, pursuant to the statutory exception in § 1692(d). ECF 4-2 at 15.

Section 1692g(a)(2)-(5) states:

> (a)   Notice   of   debt;   contents.   Within   five   days   after   the
> initial communication with  a consumer in  connection  with  the collection  of
> any debt, a debt collector shall, unless the following information is contained in the
> initial  communication or  the consumer has  paid  the debt, send  the consumer a
> written notice containing—

>                              *        *        *

> (2) the name of the creditor to whom the debt is owed;

> (3) a statement that unless the consumer, within thirty days after
> receipt of the notice, disputes the validity of the debt, or any portion thereof,
> the debt will be assumed to be valid by the debt collector;

> (4) a statement that if the consumer notifies the debt collector in
> writing within the thirty-day period that the debt, or any portion thereof, is
> disputed, the debt collector will obtain verification of the debt or a copy of
> a judgment against the consumer and a copy of such verification or
> judgment will be mailed to the consumer by the debt collector; and

> (5) a statement that, upon the consumer's written request within the
> thirty-day period, the debt collector will provide the consumer with the
> name and address of the original creditor, if different from the current
> creditor.

Congress provided an exception in § 1692g(d): "A communication in the form of a formal

pleading in a civil action shall not be treated as an initial communication for purposes of

subsection (a)." Courts have given an expansive reading to this exception. In *Carlin v. Davidson Frank LLP*, 852 F.3d 207, 213 (2d Cir. 2017), the Second Circuit concluded that the plain text of § 1692g(d) excludes "all communications in the *form* of a civil pleading . . . from the definition of initial communication." The court found that Congress "adopted a broad exclusion that, on its face, applies to any communication forming any part of a pleading." *Id*. at 213. Therefore, the Second Circuit concluded that "even documents that are superfluously attached to a formal pleading are not initial communications within the meaning of the FDCPA." *Id.*; *see also Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75, 87-88 (2d Cir. 2018).

Deitemyer alleges that the Attorney Defendants sent her an initial communication on November 21, 2017, which contained information from Dudley Turner, stating that the debt balance of $22,220.94 was "charged off" on December 3, 2012. ECF 1-3, ¶ 36. However, defendants maintain this communication was NCSLT's State court suit against Deitemyer (ECF 4-3), and therefore not subject to § 1962g(a). ECF 4-2 at 15.

To be sure, the State court docket provides that service occurred on the same date. *See* ECF 4-3 at 1. But, the Court must rely on the factual allegations in the Complaint and draw all factual inferences in plaintiff's favor. It is plausible that defendants sent plaintiff separate unattached documents on the same date. Accordingly, plaintiff states a claim.

### 5.      Bona Fide Error

In their Motion, the Attorney Defendants assert the "bona fide error" defense under 15 U.S.C. § 1692k(c). *Id*. at 13. Section 1692k(c) states: "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error."

The bona fide error defense is an affirmative defense, for which the debt collector bears the burden of proof. *See Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 375 (4th Cir. 2012). Under the bona fide error defense, a debt collector cannot be held liable for attempting to collect a debt, so long as there is a "colorable factual basis" for a client's claim. *See McLean v. Ray*, No. 11-1544, 2012 WL 2899319, at *4-5 (4th Cir. July 17, 2012) (unpublished) (holding that lawyer could not be held liable under FDCPA for pursuing litigation to collect an allegedly incorrect amount of debt where he relied on the file received from the creditor and saw no reason to question the facts provided); *Amond v. Brincefield, Hartnett & Assocs., P.C.*, 175 F.3d 1013, 1999 WL 152555 (4th Cir. Mar. 22, 1999) (unpublished table decision) (holding that debt collector lawyers cannot be held liable for what appears to be an honest dispute regarding the amount of the debt, so long as there exists a colorable factual basis for the higher amount claimed by their client).

In other words, "[t]he FDCPA does not require a debt collector to engage in an independent investigation of the debt referred for collection." *Sayyed v. Wolpoff & Abramson, LLP,* 773 F. Supp. 2d 635, 640 (D. Md. 2010) (citing *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997) (holding that a debt collector has no obligation to conduct an independent debt validity investigation); *Elane v. Revenue Maximization Grp.*, 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002) (noting that defendant was entitled to rely on its client's representation that the debt was valid)). Thus, "a misrepresentation made by the debt collector solely as a result of inaccurate information provided by its client would be a bona fide error as defined under 15 U.S.C. § 1692k(c)." *Id.* (citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (holding the defendant reasonably relied on its client's calculation of the debt owed, and the resulting misrepresentation in a subsequent communication was a bona fide error)).

Whether a defendant is entitled to the bona fide error defense will almost always depend, as it does in this case, on fact-specific circumstances. *See Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008). For example, a debt collector may invoke the bona fide error defense when the debt it seeks to collect was verified through account statements furnished by the creditor. *See Long v. McMullen, Drury & Pinder, P.A.*, RDB-10-2276, 2011 WL 4458849, at *5-6 (D. Md. Sep. 23, 2011) (citing *Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635, 640 (D. Md. 2010)) (rejecting FDCPA claim under bona fide error defense because defendant debt collector reasonably relied on client's representations as to amount and status of alleged debt, and confirmed by documentation). Similarly, the defense may be invoked by a debt collector when the attempt to collect the debt is supported by "the underlying documentation from its client, as well as a sworn affidavit from its client stating that the records were accurate." *Sayyed*, 733 F. Supp. 2d at 647.

On the other hand, in the face of a discoverable error, a debt collector cannot invoke the bona fide error defense solely on the ground that the creditor's submission of information concerning the debt to be collected had, in the past, been accurate. *See Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005-07 (9th Cir. 2008) ("The fact that the creditor had provided accurate information in the past cannot, in and of itself, establish that reliance in the present case was reasonable and act as a reasonable substitute for the maintenance of adequate procedures to avoid future mistakes."). In other words, "[t]o qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid *discoverable errors*, including, but not limited to, errors in calculation and itemization." *Id.* at 1007 (emphasis added). Thus, in *Reichert*, the Ninth Circuit held that a debt collector's reliance on the creditor's inclusion of attorney's fees in the amount of debt alleged to be owed was not a bona fide

error, because the debt collector's blind reliance on the creditor's calculations was not reasonable, where the error in those calculations was discoverable. *Id.*

Defendants claim that they "reasonably relied on the affidavits of Dudley Turner, an employee of Co-Defendant Transworld, in determining that NCSLT 2005-3 was the current owner of the debt incurred by the Plaintiff." ECF 4-2 at 14. They cite two affidavits provided by Turner in the underlying litigation. ECF 4-3 at 2, 4. The first states that NCSLT is the current owner of the debt. *Id.* at 2. The second is a signed certification of records maintained in a regularly conducted business activity by Turner. *Id.* at 4.

Defendants' assertion of the bona fide error defense fails at this stage. This is because their bona fide beliefs are irrelevant to the viability of plaintiff's causes of action.

Defendants claim that, pursuant to the bona fide error defense, they were not required to validate the *ownership* of the student debt. ECF 4-2 at 13. For example, defendants assert: "Plaintiff's claims are barred by 15 U.S.C. § 1692k(c), as the failure to have identified as the *correct/current owner* of Plaintiff's student loan debt in the underlying litigation . . . was the result of a bona fide error." *Id.* at 15 (emphasis added). However, defendants' response is a non sequitur. Plaintiff has alleged that defendants misrepresented the identity of the *creditor*, not the *owner*. At this juncture, the defense fails.

## IV. Conclusion

For the reasons stated above, I shall GRANT the Motion in part and DENY it in part. An Order follows, consistent with this Memorandum Opinion.


Date:   August 6, 2019                    _____/s/_____
                                          Ellen L. Hollander
                                          United States District Judge